RENDERED: APRIL 16, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2019-CA-1124-MR

MARIA CHALK                                                    APPELLANT

APPEAL FROM CAMPBELL CIRCUIT COURT
v.       HONORABLE JULIE REINHARDT WARD, JUDGE
ACTION NO. 18-CI-00567

ROBERT HOUP AND KELLY HOUP                                    APPELLEES

OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND
REMANDING WITH DIRECTIONS

** ** ** ** **

BEFORE: ACREE, KRAMER, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Maria Chalk brings this appeal from a June 20, 2019, Order

of the Campbell Circuit Court. Upon conducting a bench trial, the circuit court

denied Chalk's claim for land restoration damages, punitive damages, and a

permanent injunction against Robert and Kelly Houp for their intentional trespass

upon Chalk's property. Rather, the court awarded Chalk only nominal damages

for the intentional trespass to her real property. We affirm in part, reverse in part, and remand with directions.

Maria Chalk owns and resides upon real property located in Fort Thomas, Kentucky. Robert Houp and Kelly Houp (collectively referred to as "the Houps") own and reside upon real property directly abutting the rear of Chalk's property. The rear of Chalk's property is maintained in a natural overgrown state with many trees. Other facts relevant to this appeal were summarized by the circuit court as follows:

> In 2015, [Chalk] noticed Defendant, Robert Houp, behind her house cutting a tree, that had been on her property and putting pieces of it through a woodchipper. [Chalk] asked [Robert] to not cut down any trees or shrubs on her property and not to place wood chips on her property. [Chalk] told [Robert] that she wanted her property to remain in its natural state.
>
> In 2017, [Chalk] witnessed [Robert] doing work on his property. [Robert] was putting in a pool and at some point, he put in a putting green and a fire pit. . . . In April 2018, [Chalk] noticed that a portion of [the Houps'] privacy fence was taken down and then put back up. [Chalk] also saw [Robert] using an earth mover and observed that a pile of rocks was being built upon [Chalk's] property. . . . [Chalk] also saw pieces of metal, carpet, picnic table legs, trampoline springs, dead tree stumps, a pipe, shingles, and other debris . . . [upon her property]. [Chalk] testified that when she confronted [Robert] in 2015 her backyard was free of those items. [Chalk] testified that her backyard was overgrown with bushes and trees but not rock or debris.

[Chalk] hired an attorney . . . to notify [the Houps] to stop putting items on her property. [Robert] sent a letter to [Chalk's attorney] in response. [Robert] admitted to temporarily putting rock and Astroturf on [Chalk's] property but denied putting any trash or other debris on the land. . . .

Record at 75-76.

As the parties were unable to resolve their disagreement, Chalk filed a complaint against the Houps in the circuit court. Chalk claimed the Houps had committed intentional trespass upon her real property and sought an award of actual damages, punitive damages, and a permanent injunction. Following a bench trial on May 29, 2019, the circuit court concluded that the Houps had in fact intentionally trespassed upon Chalk's property. However, the circuit court held that "because the Court does not believe that the fair market value of [Chalk's] property has been diminished, [Chalk] is not entitled to actual damages." Record at 83. Instead, the circuit court awarded Chalk nominal damages of $1. The circuit court did not award punitive damages and denied the request for a permanent injunction. This appeal follows.

As an appellate court, we review a trial court's decision following a bench trial under Kentucky Rules of Civil Procedure (CR) 52.01. Thereunder, findings of fact are not clearly erroneous if supported by substantial evidence. *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Substantial evidence is evidence that "has sufficient probative value to induce conviction in the minds of

reasonable men." *Id.* at 354. The circuit court's conclusions of law are reviewed *de novo*. *Gosney v. Glenn*, 163 S.W.3d 894, 898-99 (Ky. App. 2005) (citations omitted).

Chalk contends the circuit court erred by failing to award her the restoration costs associated with the intentional trespass committed by the Houps. More particularly, Chalk asserts that the circuit court erred in failing to recognize that the amount of restoration costs necessarily reduced the fair market value of her property by an equal amount.

In Kentucky, where an intentional trespass upon real property occurs, there are generally two measures of damages available. *Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66, 69 (Ky. 2000). More specifically, where there has been "permanent" injury to real property, damages are measured by the diminution in the fair market value of the property. *Id.* at 69-70. By contrast, where there has been "temporary" injury to real property, damages are measured by the cost of restoring the property to its original condition. *Id.* However, "[r]easonable restoration costs are an available remedy only in 'temporary' injury cases where the property may be restored to its original state at a cost less than the amount by which the market value of the property decreased as a result of the trespass." *Id.* at 70. Simply stated, the measure of damages available for an intentional trespass is the **lesser** of the diminution in fair market value of the real

property or the restoration costs to return the property to its original condition. *Id.* at 69; *Muncie v. Wiesemann*, 548 S.W3d 877, 879 (Ky. 2018) (emphasis added).

As for evidence of damages in an intentional trespass case, it has been recognized that "a plaintiff . . . in an injury-to-property case need not introduce evidence of a diminution in the fair market value of the property" in order to recover restoration costs. *Ellison,* 32 S.W.3d at 74 (citing *Newsome v. Billips*, 671 S.W.2d 252, 254 (Ky. App. 1984)). In fact, the *Newsome* Court specifically held that "[i]n the absence of evidence to the contrary, it may be presumed that the anticipated cost of repair would reduce the value [of the property] by an equal amount." *Newsome*, 671 S.W.2d at 255. Simply stated, if no evidence is presented regarding the diminution in fair market value of the property, it may be presumed that the cost of restoration would reduce the fair market value by the same amount.[1]

At the hearing, Chalk introduced evidence regarding the restoration costs associated with the trespass. Among the costs of restoring her property, Chalk included the following: hiring an arborist to estimate the cost of replacing a tree, purchasing and replanting a tree, purchasing and replanting six bushes, and removing rocks, metal, ash, and a fence post. She also sought to recover lost

---

[1] In *Ellison v. R & B Contracting, Inc.*, 32 S.W.3d 66 (Ky. 2000), there was evidence presented by the defendant construction company that there had been no change in the value of the real property before and after the trespass.

wages of $68.25 per hour that she claimed to incur when she missed work to personally supervise hired workers to perform the restoration of her property. Chalk claimed total restoration costs of $7,259.68. It must be emphasized that neither party introduced evidence of the fair market value of the real property before and after the intentional trespass.

In the June 20, 2019, order, the circuit court determined that the Houps committed an intentional trespass upon Chalk's property. The circuit court found that the Houps intentionally placed Astroturf and large rocks just inside Chalk's property line while the Houps worked on a project upon their property. The circuit court further found that the Houps moved the Astroturf and some of the rocks back to their property a few days later. However, the circuit court specifically found that the Houps did not remove all of the rocks placed on Chalk's property.

At minimum, the circuit court concluded that Chalk had expended at least $520 in restoration costs as a result of the Houps' trespass. The court stated, "[t]he Court does not believe that [Chalk] has proved damages other than $520.00." Record at 83. Notwithstanding that the circuit court found that the Houps did not remove all of the rocks they had placed upon Chalk's property, which cost her $520 to remove, the circuit court ruled there were no damages "because the Court does not believe that the fair market value of [Chalk's] property

-6-

has been diminished, [so,] [Chalk] is not entitled to actual damages." Record at 83. The circuit court awarded Chalk only nominal damages of $1.

On its face, the award of nominal damages conflicts with the court's finding of actual damages incurred by Chalk that were caused by the Houps' trespass. Accordingly, the circuit court committed an error of law by disregarding the holding in *Newsome,* 671 S.W.2d 252. In the absence of evidence concerning diminution of the fair market value of the real property, it is presumed that the restoration costs of returning the real property to its original condition caused an equivalent diminution in the fair market value of the property. Here, there was no evidence presented of diminution in the fair market value of Chalk's property; therefore, the circuit court was bound by the dictates of *Newsome* to presume that the restoration costs caused an equivalent diminution in the fair market value of Chalk's property.

Therefore, we must remand this matter back to the circuit court for entry of judgment in the amount of $520 as damages for the actual and reasonable restoration costs incurred by Chalk. As concerns the other damage claims, the circuit court concluded those claims were not proven by substantial evidence. Based on our review of the record below, we must agree.[2]

---

[2] This Court notes that Maria Chalk's designation of record on appeal, filed pursuant to Kentucky Rules of Civil Procedure (CR) 75.01 and CR 98, included a videotape of the bench trial on May 29, 2019. The circuit clerk's certification of the record on appeal to this Court on

Finally as concerns the circuit court's denial of punitive damages and a permanent injunction, Chalk did not raise or address these issues on appeal and thus, we find no error in the court's ruling and shall affirm the same.

In sum, we affirm the circuit court's denial of punitive damages and a permanent injunction against the Houps. However, we reverse and remand the June 20, 2019, Order, of the circuit court on the issue of damages. Upon remand, we direct the circuit court to enter judgment for Chalk in the amount of $520 as damages in accordance with the court's findings.

For the foregoing reasons, the June 20, 2019, Order is affirmed in part, reversed in part, and this cause is remanded for proceedings consistent with this Opinion.

ALL CONCUR.

---

December 18, 2019, included one CD disc. However, upon an exhaustive review of that disc, only about one hour of the bench trial is recorded thereon. It is Chalk's duty under CR 75.01 and CR 98 to ensure that the record on appeal is sufficient for the appellate court to review the alleged errors. *Smith v. Smith*, 450 S.W.3d 729, 731 (Ky. App. 2014). Presumably, counsel for neither party reviewed the record on appeal in the clerk's office before its submission to this Court as neither party cited to the video recording of the trial in their respective briefs. On its face, this leads this Court to assume that the missing video record supports the findings and decision of the trial court. *Id.* at 732. Given that this Court reviewed the entire record on appeal submitted by the circuit clerk, including all exhibits admitted at trial, we have declined to address any CR 76.12 issues as concerns the parties' briefs.

BRIEFS FOR APPELLANT:

Todd V. McMurtry
Fort Mitchell, Kentucky

BRIEF FOR APPELLEE:

Michael L. Schulkens
Cold Springs, Kentucky