RENDERED: DECEMBER 9, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0067-MR

WILLOWGATE COMMUNITY
ASSOCIATION, INC.                                              APPELLANT

                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE MITCHELL PERRY, JUDGE
                    ACTION NO. 20-CI-003515

SARAH ELIZABETH COLLINS                                        APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; LAMBERT AND L. THOMPSON,
JUDGES.

CLAYTON, CHIEF JUDGE: This appeal involves a dispute concerning

improvements made by Sarah[1] Elizabeth Collins ("Collins") to the lot upon which

she constructed her home. Willowgate Community Association, Inc.

---

[1] Sara's name is incorrectly listed as "Sarah" in certain court documents.

("Willowgate") sought a declaratory judgment determining that Collins' fence violated the subdivision's Declaration of Covenants, Conditions, and Restrictions ("DCCR"). The Jefferson Circuit Court entered an order granting judgment in favor of Collins and found that Collins was compliant with the DCCR. After careful review, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 26, 2018, Collins obtained title to a vacant lot in a development commonly known as Willowgate Subdivision in Jefferson County, Kentucky (the "Lot"). All property owners within Willowgate Subdivision were subject to the covenants, conditions, and restrictions outlined in the DCCR. Following Collins' obtaining title to the Property, she commenced construction of a single-family home on the Lot.

In May 2019, Collins and her builder submitted an email (the "Plan") stating the following:

> Please see the attached drawings for a proposed pool/spa, privacy fence, and driveway at [the Lot].
>
> Description:
>
> Fence: 1" x 6" x 72" dog ear cedar privacy fence installed with the pickets facing towards the neighboring houses and adjoining streets. All posts, rails, and hardware will be facing the interior of the yard (see proposed elevation as viewed from neighbors/street)[.]

Pool/spa:  12' x 10' inground pool/spa provided by
Premier Pools and Spas.  (see attached specifications)[.]

Driveway:  secondary concrete driveway located in the
front yard with 2 entrances to Willow Pointe Drive (see
sketch)[.]

Attached to the email was a one-page document depicting an overhead blueprint of the proposed project.  The Plan did not call for grading, adding fill dirt, any raised concrete pad, or installing a retaining wall under the privacy fence.  Rather, it called for a 72-inch cedar fence on the pre-existing grade.  After reviewing Collins' submitted documents, Willowgate approved the Plan in June 2019.

Following Willowgate's approval of the Plan, Collins commenced construction of the Fence and other work.  Although not included in the Plan, Collins graded the Lot, added fill dirt, and installed a concrete pad, all of which elevated the height of her yard between two and three feet above the prior elevation.  Additionally, Collins installed a retaining wall of approximately three to four feet in height and a privacy fence directly on top of the retaining wall.

Section 2.5(b) of the DCCR specifically provided that "[a]ll fences and walls are subject to prior written approval by Declarant in its sole discretion and may not exceed seventy-two inches (72") in height."  In this case, the resulting barrier was approximately nine (9) feet high at its highest point, roughly three (3) feet over the 72-inch limit described in the DCCR.

In May 2020, during the Fence construction, Willowgate learned that the construction work did not comply with the Plan. Willowgate immediately objected to the construction and requested that Collins reduce the total height of the Fence from the adjacent lower grade to no more than 72 inches to comply with both the DCCR and the Plan. However, Collins continued with the Fence's construction.

Willowgate filed a complaint against Collins on June 19, 2020, wherein it asserted claims for, among other things, breach of contract, negligence, nuisance, and for a declaration of rights under Kentucky Revised Statutes ("KRS") 418.040. Collins filed an answer in which she denied violating the DCCR and a counterclaim in which she alleged abuse of process and wrongful use of civil proceedings. Thereafter, on July 14, 2020, Willowgate filed a motion for entry of declaratory judgment (the "Motion") seeking an order from the trial court that the Fence violated the DCCR.

The trial court held a bench trial on the Motion and other issues on July 21, 2021, and thereafter directed the parties to file post-trial position statements. Willowgate's position paper included a proposal to resolve the matter by requiring Collins to reduce the height of the wooden portion of the Fence by 24 inches. However, the proposal also allowed Collins to install a 12-inch decorative cap and to keep the concrete pad and retaining wall. Nevertheless, Collins refused.

On December 16, 2021, the trial court entered Findings of Fact & Conclusions of Law (the "Order") granting judgment in favor of Collins. This appeal followed.

We will discuss other facts as they become relevant.

## ANALYSIS

### a. Standard of Review

After a bench trial, Kentucky Rule of Civil Procedure ("CR") 52.01 directs the trial court to make specific findings of fact and separately state the conclusions of law upon which it relied to tender its judgment. CR 52.01; *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016). The trial court's factual findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01.

Factual findings are clearly erroneous if they are not supported by substantial evidence. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001) (citations omitted). As discussed in *Gosney v. Glenn*, "[s]ubstantial evidence is evidence, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." 163 S.W.3d 894, 898 (Ky. App. 2005) (citations omitted).

We review the trial court's legal conclusions *de novo*. *Barber*, 505 S.W.3d at 754 (citation omitted). "Under *de novo* review [the Court of Appeals] owe[s] no deference to the trial court's application of the law to the established

-5-

facts." *Interactive Gaming Council v. Commonwealth ex rel. Brown*, 425 S.W.3d 107, 111 (Ky. App. 2014) (citation omitted).

We also review a trial court's interpretation or construction of a restrictive covenant *de novo*. *KL & JL Investments, Inc. v. Lynch*, 472 S.W.3d 540, 544 (Ky. App. 2015) (citation omitted).

### b. Discussion

Willowgate first argues that the order contained incorrect findings of fact. Specifically, the trial court found that "[i]n May 2019, [Collins] submitted a plan to Willowgate for the construction of a pool, privacy fence, and driveway." The trial court further found that "[t]he planned construction was approved by Willowgate in June of 2019." We agree with Willowgate that substantial evidence in the record does not support the trial court's finding of fact regarding Willowgate's approval of Collins' planned construction.

As previously discussed, Section 2.5(b) of the DCCR states in relevant part: "[a]ll fences and walls are subject to prior written approval by [Willowgate] in its sole discretion and may not exceed seventy-two inches (72") in height." Additionally, Section 3.1(a)(i) of the DCCR states:

> [n]o clearing or grading of any Lot shall be permitted, and no structure may be erected, placed or altered on any Lot, until the Lot owner has submitted, and [Willowgate] has approved, in writing, in its sole discretion, a Lot drainage plan in accordance with Section 2.9 and a Lot grading plan showing proposed clearing limits, grading

-6-

and house location . . . and the construction plans and building specifications[.]

Here, the record reflects that Collins submitted – and Willowgate approved – a plan presenting a 72-inch cedar privacy fence on the Lot's pre-existing grade. However, the Plan did not address the way in which Collins constructed the proposed improvements. Collins greatly exceeded the scope of her initial application and as finished, her project violated a number of the provisions contained in the DCCR. Indeed, the trial court stated that "[t]he change in elevation was not presented in the initial proposal that Willowgate approved[.]" Thus, the evidence of record was insufficient to substantiate the trial court's finding that Willowgate approved the way in which Collins ultimately constructed the improvements.

We also agree that the trial court's finding regarding the Fence's height was clearly erroneous. As previously discussed, although the Fence measured 72 inches, Collins violated various other covenants contained in the DCCR by not submitting plans and obtaining Willowgate's approval for the retaining wall or the grading of the Lot.

Additionally, the trial court erred in concluding that the DCCR was ambiguous, and that Collins had complied with the DCCR as written. Under Kentucky law, "restrictive covenants are to be construed according to their plain language." *Hensley v. Gadd*, 560 S.W.3d 516, 521 (Ky. 2018). "Parties are

bound by the clear meaning of the language used, the same as any other contract." *Id*. at 522. (Citation omitted). Moreover, "[e]very part of the [restrictive covenant] will be given meaning and effect when possible." *Id*. at 521 (citation omitted).

Further, as the Kentucky Supreme Court has explained, "[i]n the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal quotation marks and citations omitted). Indeed, "courts are not to remake contracts for parties and create ambiguity where none exists." *Hensley*, 560 S.W.3d at 522 (citation omitted).

Here, in its entirety, Section 2.5(b) of the DCCR clearly and unambiguously required Collins to obtain Willowgate's prior written approval for the retaining wall. Moreover, Section 3.1(a)(i) of the DCCR clearly and unambiguously required Collins to submit, and for Willowgate to approve in writing, a lot grading plan. As previously discussed, while Collins submitted and Willowgate approved a plan that allowed for a 72-inch cedar privacy fence on the Lot's pre-existing grade, the Plan did not reflect how Collins ultimately constructed the improvements.

Collins argues that the DCCR's restriction on the height of the Fence is ambiguous as applied because it does not factor in the elevation or topography of the Lot. However, Collins only focuses on the language contained in Section 2.5 and ignores Section 3.1, which specifically addresses changes to the grading or elevation of a lot, and which requires prior approval from Willowgate. "[E]very part" of the restrictive covenant must "be given meaning and effect when possible." *Hensley*, 560 S.W.3d at 521 (citation omitted). We can discern no ambiguity.

Willowgate also contends that the trial court erred insofar as it strictly construed the provisions of the DCCR against Willowgate. The trial court relied on *Parrish v. Newbury*, 279 S.W.2d 229, 233 (Ky. 1955), for the proposition that restrictions "are to be strictly construed with doubts resolved against them[,]" and that "[*a*]*mbiguous restrictions*, like provisions in other written instruments, must be construed most strongly against the person who created them." *Id*. at 234 (emphasis added) (citations omitted). Because we have determined that the DCCR's language was not ambiguous, the trial court erred when it strictly construed the provisions of the DCCR against Willowgate.

## CONCLUSION

Accordingly, for the foregoing reasons, we reverse the order. However, because of its findings and conclusions in the order, the trial court did

not determine how Collins should remedy her DCCR violations or how Collins can alter her improvements to conform with the DCCR.  Thus, we remand this matter for additional findings and a new judgment.

ALL CONCUR.


BRIEFS FOR APPELLANT:

H. Kevin Eddins
Gregory L. Taylor
Louisville, Kentucky

BRIEF FOR APPELLEE:

T. Scott Abell
Louisville, Kentucky