RENDERED: JUNE 21, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0168-MR

JOHN D. LEE                                                                 APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE ANN BAILEY SMITH, JUDGE
ACTION NO. 21-CI-005625

STEVEN R. ROMINES                                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CETRULO, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: John D. Lee brings this appeal from a November 4, 2022,
order of the Jefferson Circuit Court dismissing with prejudice Lee's complaint
against Steven R. Romines. We affirm.

On October 4, 2021, John D. Lee filed a complaint in the Jefferson
Circuit Court against Steven R. Romines, who is an attorney. Lee asserted claims
against Romines for wrongful use of civil proceedings/malicious prosecution,

abuse of process, and intentional infliction of emotional distress. The claims

emanated from Romines' legal representation of Lee's ex-fiancé, Angela King.

More particularly, Lee alleged the following in his complaint against Romines:

> 11. On January 11, 2016, Ms. King filed her third DVO [Jefferson Family Court] against Mr. Lee based on her testimony *she later revealed to her lawyer, Mr. Romines, was false* that Mr. Lee had slapped her in the face several times and "slammed her head into the window." Mr. Lee was charged in Case 16-M-000536 [Jefferson District Court] with Assault in the Fourth Degree and an Emergency Protection Order ("EPO") was issued prohibiting Mr. Lee from, among other things, communicating with Ms. King or being near her. Mr. Lee believed Ms. King's personality behavioral issues were causing her to make the false statements leading to the EPO.
>
> 12. As early as January 19, 2016, Mr. Romines was involved in representing Ms. King on matters related to her third DVO against Mr. Lee. . . .
>
> 13. Mr. Lee was later charged with violating the EPO for his actions on January 15 and on January 16, 2016, based on sending Ms. King about 35 text messages.
>
> 14. On March 19, 2016, Mr. Lee stipulated to a probation violation relating the third DVO and was sentenced to 172 days in jail.
>
> 15. Around March 30, 2016, Mr. Romines contacted an Assistant Commonwealth Attorney in the 9th Judicial District, including Nelson County, to report Mr. Lee had been arrested and charged with violating the EPO. Mr. Romines did this in order to trigger a bond revocation on what will be described later in this Verified Complaint as "the Nelson County Diversion."

16. On April 19, 2016, Mr. Lee entered a plea on the third DVO under *North Carolina v. Alford*, 400 U.S. 25 (1970) and was sentenced to 365 days withheld on supervised probation for two years, on the conditions that he had no contact with Ms. King and commit no further criminal offenses.

17. Mr. Lee entered the *Alford* plea on the third DVO based a) on his understanding Ms. King's personality behavioral issues were causing Ms. King to make the false statements supporting the third DVO. [sic] b) his love for Ms. King and c) Mr. Lee did not yet have the results from a forensic review proving his innocence he obtained from Mr. James Sparks, a leading forensic technician with twenty-two (22) years of experience working for Louisville Metro Police.

18. On May 13, 2016, as part of Case 2015-CR-337 in Nelson County ("the Nelson County Case") the Commonwealth of Kentucky ("the Commonwealth") agreed to dismiss a charge in the case and to amend down to a lesser charge and to recommend <u>pretrial diversion</u> for a period of one year or until restitution was paid. . . . As a result, Mr. Lee was operating under a one-year pretrial diversion ("the Nelson County Diversion") during 2016 from the Nelson County case. Mr. Lee understands and believes Mr. Romines later learned of the Nelson County Diversion and as explained later in this Complaint, took advantage of his legal reputation to cause the Nelson County Diversion to be revoked based on false premise and Mr. Lee to be placed into jail to serve the sentence.[1]

19. On June 7, 2016, Mr. Lee was released from the Home Incarceration Program ("HIP"). During the time Mr. Lee was in the HIP he had no contact with Ms. King.

---

[1] In the Nelson County case, John D. Lee pleaded guilty to an amended charge of theft by unlawful taking, over $500 but less than $10,000 subject to pretrial diversion for a period of one year or until restitution was paid, and upon the condition that Lee commit no new offenses while on diversion. *See Lee v. Commonwealth of Kentucky*, No. 2017-CA-001225-MR.

20. On June 30, 2016, Ms. King came to Mr. Lee's home crying and begging for Mr. Lee to see her secretly until she could "make things right with the courts."

21. Ms. King and Mr. Lee spent the July 4th 2016 weekend together, during which they got engaged. Mr. Lee purchased two rings, one for the engagement and the second for the planned marriage with Ms. King.

22. On August 18, 2016, Ms. King forwarded to Mr. Lee, a copy of an email Ms. King had transmitted to her lawyer, Mr. Romines, in which she explained

   a) she had "started to remember more from January 10,"

   b) she had told her family about "how January 10 really went down,"

   c) "what was original[ly] said is not entirely accurate,"

   d) "I want you to dismiss the DVO and help me make things right in the other case," and

   e) generally explained her desire to reconcile and resume her romantic relationship with Mr. Lee.

. . . .

23. Later on August 18, 2016, Ms. King texted Mr. Lee explaining Mr. Romines had "replied to my email. He's[] pissed. He's not the same person he used to be to me and I'm really scared now."

24. Beginning on August 18, 2016[,] and going forward, Mr. Romines, as an officer of the Courts of the Commonwealth had duties and obligations to take reasonable remedial measures, including disclosure of the

false and perjured testimony by Ms. King to the courts in Nelson County and Jefferson County. Mr. Romines took no such remedial measures. By failing to take any remedial measures, Mr. Romines effectively assisted Ms. King in testifying falsely.

25. On August 21, 2016, Ms. King texted Mr. Lee admitting matters, which she likely explained to Mr. Romines, including:

I do NOT believe you hit me as I originally thought. I know that there was a very hard back handed whack to my face, particularly my nose, but I remember now that it was when I took my seatbelt off and we had made that sudden, near collision stop. Therefore, that does NOT make you a danger or an abusive man which is how it felt that night.

I'd have to be questioned under oath and I don't have to answer to anybody Steve [Romines] told me.

26. On August 24, 2016, Ms. King texted Mr. Lee stating,

I want you to know that I do not hold you solely accountable for what happened on the night of January 10th as originally believed to be true of the events that took place that night. I have tried to make amends but I fear in doing so through the legal system that it might be near impossible or even worse for both of us if I attempt to do that, **according to my lawyer**.

27. Later on August 24, 2016, Mr. Lee and Mr. Romines exchanged emails, during which Mr. Romines stated,

Until she completes the necessary program, we don't need to discuss it. **However**, **I will advise her against saying anything under oath that is not consistent with what she has said previously as that exposes her to potential criminal charges**. I don't deal in

-5-

"likelihoods." She has no exposure now, but she will if that happens.

28. Later in August 2016, Ms. King met with Mr. Romines, during which Mr. Lee is informed and believes Mr. Romines discovered that Ms. King had resumed her romantic relationship with Mr. Lee.

29. On September 5, 2016, Ms. King sent a text to Mr. Lee and to Mr. Romines acknowledging the ongoing "feud" over her between Mr. Lee and Mr. Romines; and advising Mr. Romines she did not want Mr. Lee to go to jail.

30. By September 5, 2016, Ms. King called off the engagement with Mr. Lee, and began a campaign of harassing Mr. Lee attempting to create evidence of Mr. Lee's violation of the EPO, likely with the encouragement of Mr. Romines.

31. On or before October 16, 2016, Ms. King and, upon information and belief, Mr. Romines filed new complaints with the Commonwealth alleging Mr. Lee had violated the EPO, notwithstanding their mutual knowledge that the EPO was founded on Ms. King's false and perjured testimony that Mr. Lee had assaulted her on January 9, 2016, when they both knew and had reason to know those allegations were false. This is the first injury after Mr. Romines was informed that Ms. King had fabricated her testimony of the alleged assault creating the five (5) year statute of limitations.

32. On October 24, 2016, the Commonwealth filed a supplemental motion to revoke the conditional discharge of 275 days for Mr. Lee.

33. On November 7, 2016, the Court revoked Mr. Lee's conditional discharge and ordered Mr. Lee to begin his jail sentence, which was based on Ms. King's false and perjured testimony and which Mr. Romines allowed to

-6-

remain in the record even though he knew the testimony was false.

34. On March 15, 2017, a "Rule" was issued that led to a hearing during which the Commonwealth convinced the Court to revoke Mr. Lee's diversion program in the Nelson District Court case 15-CR-337. The "Rule" states the hearing was to be held on April 2, 2017, notwithstanding the fact that Mr. Lee's lawyer, C. Thomas Hectus, Esq., had obtained a continuance of the matter until May 18, 2017. The second paragraph in the "Rule" states Mr. Lee had been charged with three sets of new charges for Violation of the EPOs, citing cases 17-M- 3634, 16-M-16272 and 16-M-004960 [Jefferson District Court]. The Nelson County Prosecutor, Arch C. McKay, III, Esq., would not have known about these cases unless Defendant Romines alerted him to them, just as Defendant Romines did nearly a year earlier on March 30, 2016[,] when they arrested Mr. Lee.

. . . .

36. Had Mr. Romines taken the remedial measures reasonably necessary after receiving Ms. King's message in July 2016, including disclosure to the tribunal, to correct Ms. King's false testimony concerning the events on January 10, 2016, the Commonwealth of Kentucky would not have been able to convict Mr. Lee of violating the third DVO, the EPO, or any other charge.

October 4, 2021, Complaint at 3-9.

In response to Lee's complaint, Romines filed a Motion to Dismiss for failure to state a claim upon which relief could be granted pursuant to Kentucky Rules of Civil Procedure (CR) 12.02(f). In the memorandum in support of the motion to dismiss, Romines argued that Lee's claims were time barred by

-7-

Kentucky Revised Statutes (KRS) 413.245. Thereafter, Lee filed a reply to the motion to dismiss. Lee specifically argued that KRS 413.245 was inapplicable as it "relates exclusively to civil actions brought against providers of professional services, such as attorneys, **for injury arising out of that service** . . . [and Romines] provided no service to [Lee]." Lee's Reply to Romines Motion to Dismiss at 3.

By order entered June 16, 2022, the circuit court dismissed Lee's complaint against Romines for failure to state a claim upon which relief could be granted. CR 12.02. Then, on August 10, 2022, Lee filed a CR 60.02(a) motion to vacate the June 16, 2022, order dismissing his complaint. Therein, Lee asserted that the circuit clerk failed to send him notice of the June 16, 2022, order. By order entered November 4, 2022, the circuit court found that due to mistake, inadvertence or excusable neglect committed by the circuit clerk Lee did not receive notice of the June 16, 2022, order dismissing Lee's complaint. Thus, the circuit court set aside the June 16, 2022, order. Upon reconsideration, the circuit court again dismissed Lee's complaint for failure to state a claim. More particularly, the November 4, 2022, order provided, in relevant part:

> The Court further finds that its order of dismissal entered June 22, 2022, was correct in that the complaint failed to state a claim under CR 12.02(f): the plaintiff's purported causes of action accrued no later than June 29, 2018, when he was released from prison, [in the unrelated criminal case] and since he did not file the

action until October 4, 2021, the complaint is barred by the one-year statute of limitations contained at KRS [Kentucky Revised Statutes] 413.245 – *see*, *Seiller Waterman LLC v. RLB Properties, Ltd.*, 610 S.W.3d 188, 205 (Ky. 2020)[.]

Lee filed a timely CR 59.05 motion to alter, amend, or vacate the November 4, 2022, order. By order entered January 5, 2023, the CR 59.05 motion was denied. This appeal follows.

Lee contends that the circuit court erred by applying the one-year statute of limitations found in KRS 413.245 to his claims against Romines. Lee asserts that KRS 413.245 is not the applicable statute of limitations as none of the claims Lee asserted "against Romines sound in professional malpractice; nor was Lee ever represented by Romines." Lee's Brief at 3. More particularly, Lee asserts that "Romines acted against him by contacting various individuals, courts, and others with knowingly false statements regarding Lee's assaultive acts toward King. In fact, Lee was at all times an opposing party to King [and Romines]." Lee's Brief at 3.

We begin our analysis by determining the appropriate standard of review. The circuit court dismissed this action pursuant to CR 12.02 for the failure to state a claim upon which relief could be granted. In reviewing the record, we note that the parties submitted exhibits in support of their respective positions. Since matters outside the pleadings were considered by the circuit court in

reaching its decision, we will treat the November 4, 2022, order as a summary

judgment pursuant to CR 56.  CR 12.02; *Cabinet for Human Resources v.*

*Women's Health Services, Inc.*, 878 S.W.2d 806, 807 (Ky. App. 1994).

Summary judgment is proper where there exists no genuine issue of

material fact and movant is entitled to judgment as a matter of law.  *Steelvest, Inc.*

*v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991).  Our review of a

summary judgment is *de novo*.  *Gosney v. Glenn*, 163 S.W.3d 894 (Ky. App.

2005).

Resolution of this appeal centers upon the interpretation and

application of KRS 413.245.  KRS 413.245 sets forth the statute of limitations for

actions based upon professional service malpractice and provides, in relevant part:

> [A] civil action, whether brought in tort or contract,
> *arising out of any act or omission in rendering, or failing*
> *to render, professional services* for others shall be
> brought within one (1) year from the date of the
> occurrence or from the date when the cause of action
> was, or reasonably should have been, discovered by the
> party injured. . . .

KRS 413.245 (emphasis added.)

KRS 413.245 clearly applies to "professional services" which are

defined by KRS 413.243 as "any service rendered in a profession required to be

licensed, administered and regulated as professions in the Commonwealth of

Kentucky."  And, the practice of law is clearly such a professional service.  *See Abel v. Austin*, 411 S.W.3d 728, 737 (Ky. 2013).

The statute of limitations set forth in KRS 413.245 was examined by the Kentucky Supreme Court in *Seiller Waterman, LLC v. RLB Properties, Limited*, 610 S.W.3d 188 (Ky. 2020).  The *Seiller* Court granted discretionary review to consider whether a nonclient could bring an action against a law firm that represented an opposing party regarding actions the law firm took on behalf of its client.  *Id.* at 194.  The *Seiller* Court held that "the plain language of the statute [KRS 413.245] directs that the one-year limitation applies to *any* claim against an attorney arising out of any act or omission in rendering or failing to render professional services."  *Seiller,* 610 S.W.3d at 204.  The *Seiller* Court further held that application of KRS 413.245 is not limited to claims brought by individuals who actually engaged the professional to provide the services.  *Id.*  Rather, KRS 413.245 "applies to *any* civil action against an attorney arising out of any act or omission in rendering or failing to render professional services without regard to the identity of the claimant."  *Id.* at 205.  Thus, the *Seiller* Court determined that the one-year statute of limitations of KRS 413.245 was applicable to nonclient's claims against the law firm.

In the case *sub judice*, Lee's claims against Romines for wrongful use of civil proceedings/malicious prosecution, abuse of process, and intentional

infliction of emotional distress arise from Romines representation of King. As KRS 413.245 applies to "*any* civil action" brought against an attorney that arises from the attorney's acts or omissions in the rendering or failing to render professional services without regard to the identity of the claimant, we believe KRS 413.245 is applicable herein and operates to bar any such action not brought within one year from the date of the occurrence or from the date the cause of action was or reasonably should have been discovered. Based on our review of the record, the date to trigger the running of the applicable statute of limitations was May 18, 2017,[2] and certainly no later than June 21, 2018, the date Lee was released from prison. However, the complaint was filed on October 4, 2021, well after the one-year limitation period had run. Accordingly, we are of the opinion that the circuit court properly applied KRS 413.245 in rendering summary judgment and dismissing Lee's complaint against Romines. Given that we agree KRS 413.245 is controlling in this case, we do not reach the issue of whether the exoneration rule precludes liability.[3]

---

[2] May 18, 2017, was the date of the hearing in Nelson Circuit Court where Lee's diversion was revoked by the court and Lee was sent to prison.

[3] Steven R. Romines argues in his brief that the appeal is improper because the notice of appeal only referenced the order of January 5, 2023, which denied Lee's Kentucky Rules of Civil Procedure (CR) 59.05 motion. While correct that this was an erroneous designation, under the substantial compliance doctrine, the appeal was properly taken from a final judgment which was the subject of the CR 59.05 motion. *Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019).

For the foregoing reasons, the judgment of the Jefferson Circuit Court

is affirmed.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Jeffrey A. Lawson
Covington, Kentucky

BRIEF FOR APPELLEE:

Steven R. Romines
Louisville, Kentucky

Robert D. Mattingly
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Robert D. Mattingly
Louisville, Kentucky